## MYRA L. TODD, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, June 4, and November 4, 1907.

1. **PASSENGER CARRIERS: Sudden Stop: Demurrer to Evidence.** The evidence of the conductor of the defendant's train in regard to a sudden stop thereof alleged to be uncontradicted is reviewed and held not to be wholly unimpeached by the facts and circumstances of the case, and it was not sufficient to warrant a taking of the case from the jury.

2. ———: ———: **Pleading: Collision.** The effect of a pleading was that the defendant negligently stopped a train suddenly in order to prevent a collision. *Held*, there can be no negligence in making a sudden stop to avoid a collision and save the lives of passengers; and suggestion is made as to proper allegations under the facts of the case.

3. ———: ———: **Personal Injury: Prima-Facie Negligence.** Where a train is under the care of the carrier's servants and the accident is such as in the ordinary course of things does not happen, where proper care is used, the accident affords reasonable evidence of negligence, if unexplained.

4. ———: **Negligence: Pleading: Res Ipsa Loquitur.** Where a plaintiff in his petition and instruction relies upon certain specific allegations of negligence he is not entitled to recover for other or different causes of negligence or upon the theory of *res ipsa loquitur*.

Appeal from Henry Circuit Court.—*Hon. Charles A. Denton*, Judge.

REVERSED AND REMANDED.

*John A. Davis* and *R. T. Railey* for appellant.

(1) The petition in this case does not even charge general negligence, but pleads a specific act of negligence, and by reason thereof the plaintiff must stand or fall in respect to this allegation. Grisamore v. Railway, 118 Mo. App. 390; Hamilton v. Railway, 114 Mo. App. 508; Galm v. Railway, 113 Mo. App. 593; Mueller v. Shoe Co., 109 Mo. App. 515; Breeden v. C. M. Co., 103 Mo. App. 179; Pryor v. Railway, 85 Mo. App. 378; McGarth v. Railway, 197 Mo. 105; Yall v. Gillham, 187 Mo. 408; Bagnell T. Co. v. Railway, 180 Mo. 463; Hesselbach v. St. Louis, 179 Mo. 524; Feary v. Railway, 162 Mo. 96; Bartley v. Railway, 148 Mo. 139; Chitty v. Railway, 148 Mo. 74; McCarty v. Hotel Co., 144 Mo. 402; Huston v. Tyler, 140 Mo. 263; McManamee v. Railway, 135 Mo. 447; Hite v. Railway, 130 Mo. 136; Waldhier v. Railway, 71 Mo. 518-19; Ferguson v. Railway, 100 S. W. 536, 123 Mo. App. 590; Roscoe v. Railway, 101 S. W. 32, 202 Mo. 576. (2) The rule of law is likewise as thoroughly established in this jurisdiction, that pleadings shall be strictly construed against the pleader. Snyder v. Free, 114 Mo. 367; Overton v. Overton, 131 Mo. 566; Young v. Schofield, 132 Mo. 661; Boles v. Bennington, 136 Mo. 528; Leete v. Bank, 141 Mo. 581; Sidway v. M. L. & L. S. Co., 163 Mo. 372. (3) It is equally as well settled in this state, that plaintiff is bound by the allegations of his petition. Bruce v. Sims, 34 Mo. 251; Speck v. Riggin, 40 Mo. 406; Bank v. Armstrong, 62 Mo. 65; Chapman v. Callahan, 66 Mo. 312; Donnan v. Int. & Pub. Co., 70 Mo. 175; Kuhn v. Weil, 73 Mo. 215; Weil v. Posten, 77 Mo. 287; Wilson v. Albert, 89 Mo. 546; Bensieck v. Cook, 110 Mo. 182. (4) The testimony of Hesler being unimpeached, either by direct testimony or otherwise, in the foregoing matter, must be taken as true. Higgins v. Railway, 197 Mo., 314; May v. Crawford, 150 Mo. 527; Hendley v. Railroad, 106 Mo. App. 27; Felton v. Anderson, 66 S. W. 182

(Ky.); Railway v. King, 51 S. W. 319 (Ark.); Shufelt v. Railway, 55 N. W. 1015 (Mich.); Ives v. Railway, 107 N. W. 454 (Wis.); Horn v. Railway, 55 A. & E. R. R. 158 (Ohio); Butcher v. Railway, 55 A. & E. R. R. 185 (W. Va.); Knox v. Railway, 52 Atl. 91 (Pa.); Frank v. Railway, 55 Atl. 691 (N. J.).

*Parks & Son* for respondent.

(1)   Plaintiff did not .plead one cause of action and recover upon another, as stated by defendant, but recovered upon the cause of action stated in the petition.   (2)   The introduction by plaintiff of evidence tending· to prove these allegations made for her a prima-facie case, and cast upon defendant the burden of showing that the stopping of the train with sudden and unusual force or jerking the plaintiff violently against the seat, and her consequent injury, was not the result of a want of that care and skill which the law imposes upon a common carrier, but was the result of inevitable casualty or was occasioned by some cause which human care and foresight could not prevent.   Redmon v. Railway, 185 Mo. 1; Daugherty v. Railroad, 81 Mo. 325; Coudy v. Railroad, 85 Mo. 79; Hipsley v. Railroad, 88 Mo. 348; Magrane v. Railroad, 183 Mo. 128; Kelly v. Railroad, 113 Mo. App. 468; Brod v. Transit Co., 115 Mo. App. 202; Chadwick v. Transit Co., 195 Mo. 517; Nelson v. Railroad, 113 Mo. App. 702; Goodloe v. Railway, 120 Mo. App. 194; Mefford v. Railroad, 121 Mo. App. 647.   (3)   The petition contained the additional allegation that defendant caused two trains to approach each other in close proximity from opposite directions upon the same track, but plaintiff did not have to prove the allegation or submit it to the jury, because without it she made a prima-facie case under the other allegations and the proof.   Chadwick v. Transit Co., 195 Mo. 517; Magrane v. Railway, 183 Mo. 119; Logan v. Railway, 183 Mo. 582; Furnish v. Railway, 102 Mo. 438;

Todd v. Missouri Pacific Ry. Co.

Nelson v. Railroad, 113 Mo. App. 702; Mefford v. Railroad, 97 S. W. 602; R. S. 1899, secs. 655, 798; Waldhier v. Railroad, 71 Mo. 514; Leslie v. Railroad, 88 Mo. 50; Ridenhour v. Railway, 102 Mo. 270; Koopman v. Cahoon, 47 Mo. App. 363 and cases cited. (4) Defendant's admissions in its brief and its proof at the trial settles this question of pleading and proof. Defendant has shown the act which caused the train to be stopped, and that act under the law amounted to negligence on part of defendant's employees. Defendant asserts in its brief, and its testimony at the trial was to the same effect that its engineer had orders to stop and wait at Strasburg, that he disobeyed the order and ran through and that by reason thereof the train was stopped. After plaintiff made a prima-facie case and after the burden of proof was cast upon defendant this showing by it made plaintiff's prima-facie case conclusive. See authorities cited, and especially, Redmon v. Railway, 185 Mo. 1, and cases cited; Nelson v. Railway, 113 Mo. App. 707; Mefford v. Railway, 97 S. W. 602, and cases cited; Russell v. Insurance Co., 55 Mo. 585; Shirt v. Overjohn, 60 Mo. 305, 308; Magrane v. Railway, 183 Mo. 119; Koopman v. Cahoon, 47 Mo. App. 363, cases cited.

BROADDUS, P. J.—The plaintiff was a passenger on one of defendant's trains. She claims that she was injured while she was a passenger on one of the cars of said train and recovered judgment from which the defendant appealed. The cause of action is predicated upon the charge of negligence as set forth in the following statement of her petition:

"Plaintiff states that on the first day of June, 1902, and while this plaintiff was a passenger for hire on one of defendants east-bound trains conducted and operated by defendant and bound for Holden, Missouri, at a point just east of Strasburg, defendant, its agents, servants and employees negligently and carelessly caused

and permitted the train this plaintiff was riding upon and one of its trains coming from the opposite direction to approach each other in close proximity on the same track, and by reason thereof to avoid a collision defendant, its agents, servants and employees negligently and carelessly caused the said train to jerk plaintiff violently to and against one of the chairs or seats of said car, and severely and permanently injured her " etc.

It appears from the evidence of plaintiff that she and her son about eight years old, were among many other excursionists on the car and that her son sat next to the window of the car while she sat, in the same seat, next to the aisle, and that said train had orders to await at said station for a freight train coming from the opposite direction. The train instead of stopping at the station passed by and at a short distance beyond came in sight of the approaching freight running around a curve from the opposite direction on the same track. There were several blasts of the whistle on the engine pulling the excursion train of such an extraordinary character as to attract the attention of some of the passengers, which caused them to stand up and numbers of them to look out of the windows to ascertain the cause of the alarm. The plaintiff stood partially up, leaning across her son and looked out of the window. Just then the train came to a sudden stop, which had the effect of pitching or throwing her onto the back of the seat in front and then back into her own. She was rendered unconscious and was severely injured. The excursion train backed to Strasburg, went onto a side track and awaited the freight train, which shortly came on and passed.

On the other side the conductor testified that, there was no freight train in sight when the speed of his train was checked and backed to the station and that there was no unusual jar caused thereby. He further states that the engineer had disregarded his orders to stop at

the station but that the freight train was passed by his train at the next station.

It is urged with much persistency by defendant's counsel that under the facts the plaintiff was not entitled to recover. The contention of defendant is predicated upon what is asserted as the uncontradicted evidence of its conductor, Hesler. He was questioned and answered as follows:

"Q. I will get you to state what, if anything, out of the ordinary occurred in making that stop? A. Well, the engineer seemed to have overlooked his hand in regard to the time there. Seemed there was some difference of time there, of one, two or three minutes, and he was going by a wait order there. He should have stayed there a couple of minutes longer on a wait order, and I stopped him with the air. I applied the air from the rear end of the train.

"Q. I will get you to state what was the character of that stop, if you know? A. Well, the stop was nothing out of the ordinary of stopping the train with air being applied in the coaches. Stops of that kind are made every day and every trip.

"Q. I will get you to state what occurred after the stop was made? A. Well, we backed in between the switches, waited until the time was up and proceeded on our run.

"Q. I will get you to state whether or not you met any other train or not at that point? A. No, sir.

"Q. At what point did you pass the freight train after leaving there? A. At the next station six and one-half miles beyond, Kingsville."

The defendant contends that this evidence is not contradicted by any other witness in the case and that "There is not a scintilla of evidence tending to show that anyone else had anything to do with stopping the train or causing it to be stopped except Hesler." It is

126 App—44

true there is no positive evidence tending to contradict the statement of the conductor that any person other than himself had anything to do with stopping the train, but it does not necessarily follow from that fact alone that the stoppage was an ordinary one, for he could with the application of the air-brakes have made it a violent and sudden stop.  And when we come to consider the circumstances that the engineer had disobeyed the order in passing the station, thereby inviting a collision with the freight train, which the order to wait at the station was made to avoid,  it was but natural and probable that the conductor's effort to avoid such a result was accompanied with much haste and that he applied sufficient power to bring the train to a sudden and violent stop.  The unusual blasts of the whistle goes to show that there was much haste and that the engineer exercised the power at his command, to some extent at least in checking as well as returning the train to the station. Besides plaintiff's witnesses testified that the shock was so great as to shake up the pasengers and to injure more than one of them.  We are of the opinion that there was not such a lack of evidence upon plaintiff's behalf as would have authorized the court upon the theory on which the case was tried, to have directed a verdict for defendant.

In a former opinion the case was reversed and remanded.  On motion a rehearing was granted and the cause reconsidered.  Upon reconsideration we are persuaded that what was then said upon a material issue in the case should be adhered to.  That opinion reads as follows: "It will be observed that there are two acts of negligence charged.  First, that defendant permitted the two trains to approach each other in close proximity, from opposite directions, on the same track.  And that it negligently and carelessly caused the train to jerk plaintiff violently against one of the seats.  The meaning of the last allegation is, of course, that defendant

suddenly and with unusual violence stopped the train on which plaintiff was riding. It is so interpreted by plaintiff's first instruction which submitted the act of a sudden, violent stopping as the negligence upon which recovery is sought. The defendant's counsel asked that that part of the negligence charge be withdrawn from consideration, and the trial court refused to do so, but, as just stated submitted it to the jury as a basis of recovery. In so doing, we are of opinion that manifest error was committed. The case, as made by the evidence in plaintiff's behalf, was, that defendant negligently permitted the train upon which plaintiff was riding and the freight train to approach each other on the same track. . . . We cannot understand how defendant's servants can be charged with negligence in making a sudden stop in order to avoid a collision and to save the lives of the passengers in its charge. There was a total failure as naturally there must have been, to show any negligence in the manner of stopping the train."

The plaintiff should have alleged in her petition that the defendant's agents and servants were negligent in passing said station in violation of the order to do so, thereby causing the necessity of the sudden and violent stoppage in order to prevent a collision between the two trains approaching each other on the same track. In other words to allege that the proximate act of negligence was the failure of the defendant's employees to stop at the station on the wait order spoken of by the conductor. [Turner v. McCook, 77 Mo. App. 196; Sira v. Railroad, 115 Mo. 133.]

The plaintiff seeks to meet this objection to her case, on the theory that, when she proved that she was a passenger on defendant's train and that she was injured by its sudden and violent stoppage she made out a prima-facie case; and that when her case was thus made out, "it became the duty of defendant to show why the violent and unusual stop was made and that it was not the

result of want of that care on its part which the law required of a common carrier, but was occasioned by some cause which human care and foresight could not prevent." It is the law that "Where the thing is shown to be under the management of the defendant or its servants, and the accident is such as in ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." [Chadwick v. Transit Co., 195 Mo. 517, and case therein cited.] Under these authorities it may be safe to say that the injury to plaintiff while a passenger on defendant's train by a sudden stoppage of the car, in the absence of an explanation by defendant, was prima-facie to be attributed to the negligence of the defendant. Such an accident not being such as would occur in the usual operation of passenger trains.

However the rule cannot be applied to this case, for the reason that the plaintiff relied solely for recovery upon the alleged negligent act of defendant in suddenly stopping its train with unusual violence, which as has been stated was a proper thing to do in order to avert the peril of a collision with an approaching freight train. The rule is too well settled in this State to cite precedents to show that where a plaintiff in his petition and instruction rely upon certain specific allegations of negligence he will not be entitled to recover for other or different causes of negligence, or upon the theory of *res ipsa loquitur.*

Many other questions are raised by defendant, but as they mostly arise out of questions which solely belong to the jury to determine, we do not think it necessary to give them any particular notice. The cause is reversed and remanded with leave to plaintiff to amend her petition to conform to views herein expressed. All concur.