LEONG KIM WAI v. BURNETT, Immigration Inspector.

Circuit Court of Appeals, Ninth Circuit.

January 23, 1928.

No. 5128.

1. Aliens ⬅=32(8)—Order deporting Chinese claiming Hawaiian nativity held warranted.

Order for deportation of Chinese person claiming nativity in Hawaii *held* supported by the evidence.

2. Evidence ⬅=1—Judge's personal knowledge may not be basis of decision, if not matter of general knowledge.

A judge may not make his personal knowledge of facts, not of general knowledge, the basis of his decision.

Appeal from the District Court of the United States for the Territory of Hawaii; William T. Rawlins, Judge.

From an order entered by the District Court for the Territory of Hawaii, for deportation, as an alien, of Leong Kim Wai, alias Chun Kim Wai, alias Leong Yueng Hin, in a proceeding by A. E. Burnett, Immigration Inspector of the United States for the Territory of Hawaii, the alien appeals. Affirmed.

Peters & O'Brien, of Honolulu, Hawaii, for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., and Sanford B. D. Wood, U. S. Atty., and Charles H. Hogg, Asst. U. S. Atty., both of Honolulu, Hawaii, for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. [1] This is an appeal from an order of deportation entered in the District Court of the United States for the territory of Hawaii. The appellant claims that he was born in Hawaii in 1896, that he accompanied his mother to China in 1900, and that he returned from China and was admitted to the territory in 1916. The government concedes that a male child of the age of about four years, accompanied by his mother, Goo Shee, was a passenger on the steamship Doric, sailing from Honolulu for Hong Kong on September 22, 1900, and likewise concedes that the appellant was admitted to the territory in 1916, representing himself to be the same person who departed from the territory on the above steamer in 1900, accompanied by his mother, but denies that the appellant was born in the territory or that he was the same person who departed from Honolulu on the steamship in question. The court below found that the appellant had not established, by affirmative proof or otherwise, his lawful right to be or to remain in the United States, and the order of deportation followed. The question involved is exclusively one of fact, and the testimony offered is conflicting, indefinite, and unsatisfactory. When admitted in 1916 the appellant testified that his name was Leong Kim Wai; that he had no other name; that he was born on Beretania street, Honolulu, in 1896; that he accompanied his mother to China in 1900 when four years of age; that his father's name was Leong Sing, or Leong Yau Won; that his mother's name

was Goo Shee, and, among other things, that his parents never discussed in his presence the big fire that occurred in Honolulu before their departure. In his marriage license issued in 1920 the appellant gave his name as Chun Kim Wai, his father's name as Chun Yan On, and his mother's name as Lee Shee.

As a witness on the trial, appellant testified that his name was Leong Kim Wai; that he had another name, Chun Kim Wai; that he took the latter name from a person who had adopted him in China; that he heard his parents at different times discussing the big fire in Honolulu; that he did not know who . paid his fare coming over; that his father arranged it; that Chun Hoon, of Honolulu, advanced the money, about $100, and that he believed that a policy of insurance taken out in his name in the sum of $2,000, soon after his admission, was taken out for the purpose of protecting Chun Hoon in case the appellant died. Chun Hoon, on the other hand, testified that he did not advance the money to pay the appellant's fare from China; that he had no correspondence with his parents about his coming; that he made one of the affidavits upon which the appellant was admitted in 1916, but knew little or nothing about what the affidavit contained; and that he thought that the alleged father of the appellant lived in the country some place, and not on Beretania street.

Other conflicts and discrepancies in the testimony we need not consider. The appellant himself did not know where he was born, had no recollections of Hawaii, and none of his witnesses were able to identify him as the child they saw or knew in Honolulu some time prior to 1900. The situation confronting the court below was a peculiar one at best. The immigration records at Honolulu show that nine different persons of Chinese descent have been admitted to the territory in recent years, each claiming and claiming successfully that he was the identical person who left Honolulu on the steamship Doric in 1900, accompanied by his mother, Goo Shee. Of course, the appellant should not be deported because of the numerous frauds thus perpetrated by others; but the circumstances were such that it behooved the court below, and now behooves this court, to scrutinize the record with the utmost care, to the end that the exclusion and immigration laws may not be set at naught, in that territory or elsewhere. A careful scrutiny of the testimony convinces us that the conclusion of the court below was not only right, but that no other conclusion is warranted by the testimony.

[2] In the course of his opinion, and also during the trial, the judge of the court below stated that his personal knowledge and recollection of conditions existing in the vicinity of certain streets in Honolulu some 30 years ago differed widely from the conditions as testified to by one of the witnesses for the appellant. As a matter of course, a judge cannot make his individual knowledge of facts without his judicial knowledge the basis of his decision or judgment. "Judicial knowledge, however, is limited to what a judge may properly know in his judicial capacity, and he is not authorized to make his individual knowledge of a fact not generally or professionally known the basis of his action." 23 C. J. 61. "Of private and special facts, in trials in equity and at law, the court or jury, as the case may be, is bound carefully to exclude the influence of all previous knowledge." Brown v. Piper, 91 U. S. 37-42 (23 L. Ed. 200). "The personal knowledge of the chancellor is not judicial knowledge of the court, for there is no way of testing the accuracy of knowledge which rests entirely within the breast of the court." Weatherton v. Taylor, 124 Ark. 579, 187 S. W. 450. But, as already stated, the testimony will support no other finding than the one made, and for that reason the unauthorized conduct of the trial judge in this regard did not constitute prejudicial error.

The order of deportation is therefore affirmed.