No. 84,967

SARAH M. FRIESEN-HALL, individually and for the heirs, and as Administratrix of the Estate of Marvin L. Hall, deceased, *Appellant*, v. BRITT COLLE, Special Administrator of the Estate of Jack Lon Kimbrough, deceased, *Appellee*.

(17 P.3d 349)

Opinion filed January 26, 2001.

*Joel W. Riggs*, of McMaster & McMaster, of Wichita, argued the cause and was on the briefs for appellant.

*Susan E. McKeon*, of Cooling & Herbers, P.C., of Kansas City, argued the cause, and *James E. Ramsey*, of the same firm, was with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an aviation negligence action. The trial court granted summary judgment to the defendant. Plaintiff asserts the trial court erred in granting summary judgment to the defendant as to the sufficiency of the evidence of (1) who was piloting the plane at the time of the crash and (2) the defendant pilot's negligence.

On March 5, 1994, a Piper PA-38 Tomahawk airplane (Tomahawk) crashed in Reno County, resulting in the death of its occupants, Marvin Hall and Jack Kimbrough. Hall owned the airplane and possessed a commercial pilot's license and was a flight instructor certified by the Federal Aviation Administration (FAA). Kimbrough possessed a private pilot certificate issued by the FAA. The Tomahawk had two occupant seats, which were situated beside each other in the cockpit, and dual controls such that each occupant had a set of flight controls that allowed either pilot to fly the airplane. The purpose of the flight was Kimbrough's biennial flight review.

On March 4, 1996, the plaintiff, Sarah Friesen-Hall, Hall's surviving spouse and the administratrix of his estate, filed a petition seeking damages in excess of $50,000 against Kimbrough's estate, alleging that the crash of the airplane was the result of Kimbrough's negligence. Britt Colle, special administrator for Kimbrough's estate, answered the petition.

Colle moved for summary judgment, claiming that Friesen-Hall had failed to put forth admissible evidence that Kimbrough was piloting the Tomahawk at the time of the negligent act that caused the crash of Tomahawk. The court granted summary judgment to Colle, stating:

> "The plaintiff is unable to bring forth any facts in the form of admissible evidence that Jack Lon Kimbrough was actually flying the airplane at the time of the event causing the accident and that Jack Lon Kimbrough was negligent. This failure of proof causes the court to concur with defendant and grant the summary judgment motion as requested."

Friesen-Hall appealed the grant of summary judgment to the Kansas Court of Appeals. The case was transferred to the Supreme Court pursuant to K.S.A. 20-3018(c).

## SUMMARY JUDGMENT

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah,* 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

Friesen-Hall contends that the trial court erred in finding that there was no admissible evidence to support Friesen-Hall's claim that Kimbrough was piloting Hall's airplane at the time of the negligent act that caused the crash and the crash resulted from Kimbrough's negligent operation of the airplane.

The parties agree that the resolution of the issues is dependent on three questions: (1) Are the assertions in the affidavits and reports submitted in the plaintiff's opposition to the defendant's motion for summary judgment admissible evidence for purposes of opposing summary judgment? (2) Can the identity of the pilot and negligence of the pilot be proven by circumstantial evidence? (3) If circumstantial evidence is sufficient to prove negligence in such a case, was the admissible evidence presented by Friesen-Hall sufficient for her to defeat the defendant's motion for summary judgment?

K.S.A. 1999 Supp. 60-256(e) provides that supporting and opposing affidavits relative to a motion for summary judgment shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

For summary judgment, the question is whether the identity of the pilot and negligence of the pilot may be proven by circumstantial evidence. This question previously has been considered in two prior Kansas aviation actions involving dual control airplanes. See

*In re Estate of Rivers*, 175 Kan. 809, 267 P.2d 506 (1954); *In re Estate of Hayden*, 174 Kan. 140, 254 P.2d 813 (1953). This court has twice stated that the burden of proof is difficult in cases involving airplane crashes. The circumstances relied on must be of such nature and so related one to the other that the only reasonable conclusion to be drawn is the theory sought to be established; that a fact is not proven by circumstances merely consistent with its existence, and that a finding of negligence must be established by competent proof and cannot rest on mere conjecture. *Rivers*, 175 Kan. at 812.

In *Hayden*, which was decided prior to the adoption of the Kansas Code of Civil Procedure in 1964, this court considered the quality of evidence necessary to prove pilot identity and negligence. The plaintiff's husband, Boyle, and another passenger, Callahan, were riding in an airplane which was owned and flown by Hayden at the time of the accident. All the occupants were killed in the crash. The plaintiff alleged in her petition against Hayden's estate that Hayden flew the airplane contrary to the accepted rules of safety for flying in disregard to his own safety and the safety of his passengers. At the close of the plaintiff's evidence, the defendant moved the court to dismiss the claim because the evidence introduced by the plaintiff was insufficient as a matter of law. The district court overruled the motion to dismiss and allowed the case to go to the jury. The jury returned a verdict in favor of the plaintiff. The defendant appealed, contending that the evidence of negligence was insufficient as a matter of law to allow the case to go to the jury.

Pertinent facts in *Hayden* include that the airplane's front seat held two passengers and was equipped with dual controls, permitting its operation by either of two persons seated in the front seat. The controls which operated the ascent and descent of the airplane were located on the ceiling of the plane, in the middle between the two seats, and was accessible to and could be operated by any persons seated in the plane. Although the airplane had dual controls and could be flown in the air by either pilot independent of the other, it could not be taken off or landed by the pilot seated in the right front seat without help from the pilot seated in the left

front seat because the plane required use of the brakes on those maneuvers, and there were no brake pedals on the right side of the cockpit.

At take-off, Hayden, who had several hundred hours of flying time, was seated in the left front seat of the airplane. Callahan, who was a truck driver with about a hundred hours of flying time and had soloed, was seated in the right front seat. Boyle, who was a maintenance technician with a small amount of flight time and was not a licensed pilot, was sitting in the rear seat. None of the persons in the plane could have changed seats while the plane was in the air.

After a normal take-off, the airplane made a 90-degree left turn and proceeded in a southeasterly direction for an estimated 10 minutes when it crashed to the ground. There was one eyewitness to the accident, and he was too far away to identify or observe the activities of the persons involved in the crash. However, there was ample evidence to establish that the positions of the occupants of the plane were the same as they had been at the start of the flight.

At trial, the plaintiff presented further evidence that Hayden was the operator of the plane at the time of the crash and that Hayden's negligence caused the accident. The evidence included that Hayden's flying privileges had been revoked at other airports for negligent flying. It also included physical evidence from the crash that Hayden was still strapped to his seat with the safety strap unbroken when his body was removed from the plane, which indicated that Hayden had his hands on the control wheels and had used them as a lever or brace, while the safety strap of the passenger on the right side of cockpit was broken. The wheel on the left-hand control was pulled off and the column controlling the wheel was bent upward, all indicating that the plane was being flown from the left-hand side at the time of the crash and that great pressure was exerted by the pilot in the left-hand seat to pull the plane out of the stall.

The *Hayden* court began its analysis by stating that in the absence of a statute covering the operation and management of airplanes at the time and place of an accident, specifically applicable to the issue of negligence in the operation thereof, the rules of law

applicable to torts—the ordinary rules of negligence and due care—apply. 174 Kan. at 144. The *Hayden* court then rejected the defendant's contention that the Kansas guest statute pertained to persons who are transported by owners or operators of airplanes, concluding that the guest statute applies only to persons who are transported by owners or operators of motor vehicles. 174 Kan. at 145.

The *Hayden* court noted the elements of an action in negligence included the "existence of the acts of negligence relied on and . . . [proof] that the person charged with their commission actually committed them." 174 Kan. at 145. The *Hayden* court found that there was evidence by experts and others which, if believed, was sufficient to warrant a conclusion that the airplane was operated in violation of well-established and accepted rules for safe flying and that the negligence of someone was the cause of the crash. However, the court found that the evidence was insufficient to prove that Hayden's actions were the cause of the airplane crash, stating:

> "We are not in accord with the appellee's view that when three acquaintances take off from an airport in an airplane, equipped for dual flying, the fact one of them was the owner of the plane and was seated in the left-hand or driver's seat at the time it took off from such airport or that he had been ruled off some other airport for negligent flying creates a presumption or warrants an inference that the owner continued to operate and was at the controls of the plane at the time of a crash. Nor do we agree [with] the fact there is evidence the plane could not be taken off or landed from the right-hand side or that after a crash the owner was found in the same seat he was in when the plane took off justifies any such conclusion. So far as the issue now under consideration is concerned it is clear from the evidence that control of the plane could have been shifted between Hayden and Callahan at will after the take-off, that the crash did not occur while landing or taking·off, and that Hayden could not have changed his position after the flight started, hence he was bound to be in the same seat at the moment of the crash." 174 Kan. at 151-52.

The *Hayden* court concluded that, accepting all the plaintiff's evidence as true, the answer to the question as to who was at the controls of the plane at the moment of the crash must not be predicated upon speculation, surmise, or conjecture, which is in-

sufficient to sustain the judgment in favor of the plaintiff. 174 Kan. at 152-53.

A year after *Hayden*, in *Rivers*, this court revisited the issue of proof of negligence in an airplane crash. An accident occurred when two airplanes collided in the air and all the occupants of the airplanes were killed. Scott, a student pilot, was flying by himself in one plane, and Rivers, also a student, and Rawson, a person with prior flight experience, were in the other plane. The owner of both planes, Moritz, sued the estate of Rivers, alleging that the collision was caused by the negligence of Rivers.

The Rivers plane was operated by dual controls. Moritz presented evidence that Rivers was in the left-hand seat when the plane took off. When the plane was recovered, Rivers' body was on the left-hand side and Rawson's body on the right. The *Rivers* court found that due to the dual control feature of the airplane, these two facts constituted no evidence whatsoever of who was flying the plane when the collision occurred. 175 Kan. at 813. The court concluded that there was insufficient evidence to go to the factfinder because the material issue regarding who was piloting the plane at the time of the crash rested upon mere speculation, surmise, or conjecture. 175 Kan. at 813.

Here, Friesen-Hall argues that the standard announced in the *Hayden* and *Rivers* cases presents too great a burden to a plaintiff in a negligence case. She points out that both *Hayden* and *Rivers* stated the rule that negligence, like any other lawsuit, may be established by circumstantial evidence. *Rivers*, 175 Kan. at 812; *Hayden*, 174 Kan. at 144. She argues that the rule that pilot negligence in a dual control plane crash cannot be proven by circumstantial evidence is contrary to the burden of proof in civil cases generally, and the rule does not consider the impact of the adoption of comparative fault principles.

Friesen-Hall does not explain how comparative fault affects the rule, except to state that she need not prove that Kimbrough was solely at fault for the crash but only that he bore at least 1 percent of the fault for the crash. Whether she must provide 1 percent fault or 51 percent fault, the rule applicable to the quality of admissible evidence is the same.

In *Todd v. Weikle*, 36 Md. App. 663, 376 A.2d 104 (1977), the Maryland court, in addressing the question of circumstantial evidence to prove pilot identity in a dual control plane crash, reviewed cases from other jurisdictions, including *Hayden*. The *Weikle* court stated:

"In our review of the decided cases, we perceive two extreme positions. On the one hand, there is a line of authority which demonstrates for all practical purposes a judicial unwillingness to submit the issue of pilot identity to a jury based upon circumstantial evidence. [Citations omitted, including *Hayden*.] The other extreme is the Minnesota rule or the 'pilot in command' doctrine, as that term is defined in the Federal Air Regulations, which holds that the pilot in command is responsible for the negligent act, irrespective of whether or not he is in actual operation of the controls at the time of the fatal crash. [Citation omitted.]

"In our judgment the proper approach to this question of pilot identity is the rule which applies generally in civil actions, that is, pilot identity must be proved by the plaintiff by a preponderance of the evidence under the standard that the fact sought to be proved is more likely so than not so. This is what we mean by a preponderance of the evidence. [Citation omitted.] This rule is the same whether the evidence bearing upon the question at issue is direct or circumstantial." 36 Md. App. at 669-70.

The *Todd* court went on to explain the level of circumstantial evidence required:

"It must be recognized, of course, that in the case of a disaster involving a small private aircraft where all of the several occupants have perished, there can ordinarily be no certainty of pilot identification, and in the generality of cases, the evidence bearing upon that issue will be entirely circumstantial. To withstand a motion for a directed verdict, the plaintiff should be required to produce probative evidence that the individual claimed to be the pilot was the one in charge of the controls at the critical instant of time. Probative evidence is not evidence that invites speculation and when appellants argue, as they do in their brief, that the 'majority rule prohibits jury speculation on the identity of the individual piloting a dual control aircraft,' they are speaking not of a 'majority rule' applicable to aviation accidents but of a fundamental precept of law which proscribes jury speculation in any case, civil or criminal." 36 Md. App. at 670.

Friesen-Hall asserts that we should adopt the Minnesota pilot-in-command doctrine. Neither of our two prior dual control airplane crash cases, *Hayden* and *Rivers*, nor the Minnesota pilot-in-command doctrine noted in *Todd* contemplate an examination situation. Under our facts, Hall, as the examiner, was not respon-

sible as the pilot in command because under FAA regulations he represented the administrator for the purpose of conducting a practical test. In test situations, the examiner (Hall) is not the pilot in command during the test unless the examiner agrees to act in that capacity for the flight or for a portion of the flight by prior arrangement with the applicant (Kimbrough) or a person who would otherwise act as pilot in command of the flight. 14 C.F.R. 61.47 (2000).

In Kansas cases after *Hayden* and *Rivers*, where the issue to be decided was peripheral to whether circumstantial evidence will support a claim of pilot negligence in a dual control airplane accident case, the level of evidence required in such a case has been commented on. See *Walker v. Imperial Casualty & Indemnity Co.*, 1 Kan. App. 2d 349, 564 P.2d 588, *rev. denied* 225 Kan. 846 (1977) (*Hayden* Rule recognized). We decline to adopt a doctrine that holds a pilot responsible for the negligent act, irrespective of whether that pilot is in actual operation of the controls at the time of the fatal crash.

Was the district court's grant of summary judgment to the defendant proper? On appeal, we apply the same rules as the district court, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. Resolving all facts and inferences in favor of the plaintiff Friesen-Hall, the question as to who was piloting the dual control airplane when the event occurred that caused the airplane to crash is still left to speculation, surmise, or conjecture. The district court did not err in granting summary judgment to the defendant.

Affirmed.